UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Chikki C.,<br><br>　　　　　　Plaintiff(s),<br><br>vs.<br><br>Kilolo Kijakazi.,<br><br>　　　　　　Defendant(s). | 2:23-cv-01927-MDC<br><br>**ORDER DENYING REMAND AND AFFIRMING COMMISSIONER** |

Plaintiff commenced this action seeking review of the final decision of the commissioner of social security. Pending before the Court is plaintiff Chikki C.'s Brief (ECF No. 12) which requests the Court either reverse the Administrative Law Judge's ("ALJ") March 31, 2023, decision ("decision") and award benefits or reverse the decision and remand for further proceedings. ECF No. 12 at 12-13. Also present before the Court is the Commissioner's Countermotion (ECF No. 16) which requests the Court to affirm the ALJ's decision. ECF No. 16 at 2:12. The Court DENIES plaintiff's requested relief. The Court grants the Commissioner's Countermotion and AFFIRMS the decision of the ALJ.

**I.　　BACKGROUND**

On January 18, 2021, plaintiff filed a Title II application for disability insurance. AR[1] 11. Plaintiff alleged an onset date of January 1, 2020. *Id.* Plaintiff later amended her alleged onset date to December 29, 2020. *Id.*; see also ECF No. 12 at 3, n.1; AR 120. The claims were initially denied on January 11, 2022, and upon reconsideration on July 7, 2022. *Id.* Plaintiff requested a hearing before an ALJ on August 4, 2022. *Id.* A telephonic hearing was held on December 21, 2022. *Id.* On March 31, 2023, the ALJ found that Plaintiff was not disabled between December 29, 2020, and the date of the decision. *Id.* at 35-36.

---

[1] The Certified Administrative Record ("AR") is ECF No. 10-1. All pages referencing the AR will reflect the AR page numbers, i.e., AR 11 is ECF No. 10-1 at 15.

1

The ALJ used the five-step sequential evaluation process (20 CFR 404.1520(a)) to determine whether Plaintiff was disabled. AR 12. The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025 (Exhibit 8D).

2. The claimant has not engaged in substantial gainful activity since December 29, 2020, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: multiple myeloma, compression fractures with kyphoplasty and peripheral neuropathy (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing for 4 hours and walking for 4 hours that would total no more than 4 hours on one's feet in an 8-hour workday; and sitting for 6 hours; pushing and/or pulling as much as she can lift and carry. She can frequently operate foot controls bilaterally. She can frequently operate hand controls bilaterally. She can frequently reach overhead bilaterally. For all other reaching, she can perform frequently bilaterally. She can frequently handle, finger, and feel bilaterally. The claimant can climb ramps and stairs occasionally but never climb ladders ropes or scaffolds. She can stoop, kneel, crouch and crawl occasionally. The claimant can never work at unprotected heights, and she can have occasional exposure to moving mechanical parts and no more than occasional motor vehicle operation. The claimant can have occasional exposure to non-atmospheric extremes of cold and heat and occasionally exposure to vibration.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was found to be an individual who was closely approaching advanced age but later subsequently changed the age category to advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10. The claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a, and 404.1568(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 29, 2020, the amended alleged onset date through the date of the decision (20 CFR 404.1520(g)).

AR 11-35.

Plaintiff appealed the ALJ's decision on April 24, 2023; however, on October 4, 2023, the Appeals Council declined to disturb the decision of the ALJ. AR 1-4. Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks review of the decision. Plaintiff's sole argument on appeal is that "[t]he ALJ failed to provide clear and convincing reasons in rejecting [her] symptom testimony." ECF No. 12 at 5:11-12.

## II.    DISCUSSION

### A.    Review Standard

The Fifth Amendment prohibits the government from depriving persons of property without due process of law.  U.S. Const. amend. V.  Social security plaintiffs have a constitutionally protected property interest in social security benefits.  *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990).  When the Commissioner of Social Security renders a final decision denying a plaintiff's benefits, the Social Security Act authorizes the District Court to review the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

The District Court's review is limited.  *See Treichler v. Comm'r of SSA,* 775 F.3d 1090, 1093 (9th Cir. 2014) ("It is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency."). The Court examines the Commissioner's decision to determine whether: (1) the Commissioner applied the correct legal standards; and (2) the decision is supported by "substantial evidence."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is defined as "more than a mere scintilla" of evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Under the "substantial evidence" standard, the Commissioner's decision must be upheld if it is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938) (defining "a mere scintilla"

of evidence). If the evidence supports more than one interpretation, the Court must uphold the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### B. Standard For Assessing Subjective Testimony

At issue is whether the ALJ provided clear and convincing reasons for rejecting plaintiff's symptom testimony. A claimant's subjective symptom testimony "becomes important at the state where the ALJ is asserting residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001) (citing 1996 Social Security Ruling (SSR) 96-7p, 1996 SSR LEXIS 4)). "Such testimony is inherently subjective and difficult to measure." *Coleman v. Saul*, 979 F.3d 751, 755-56 (9th Cir. 2020). This evaluation is often crucial to a finding of disability. *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989)).

In assessing the credibility of a claimant's subjective symptom testimony, an ALJ engages in a two-step analysis:

> First, the ALJ must determine whether the claimant has present objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (internal citations and quotations omitted).

In weighing a claimant's credibility, the ALJ may consider factors such as, but not limited to: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less

than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). "[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (internal quotations and citations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998). *See also Holohan v. Massanari,* 246 F.3d 1195, 1208 (9th Cir.2001) ("the ALJ must specifically identify the testimony she or he finds not to be credible and must *explain* what evidence undermines the testimony") (emphasis added)).

      **C.**     **Plaintiff's Subjective Symptom Testimony**

Plaintiff filed for disability due to myeloma. ECF No. 12 at 5:13, AR 296. At the time of the hearing before the ALJ, plaintiff was undergoing treatment for the myeloma. AR 120. During the hearing, plaintiff testified to various physical and mental health symptoms, from pain to anxiety.

As to her physical symptoms, plaintiff testified that she stopped working due to her back pain. AR 125-26. She stated that she underwent a kyphoplasty for the pain, and although it helped "a little bit" she is "in continual pain." AR 126-27. Plaintiff claimed that her back pain is currently managed by medication, and although "it helps a little bit" she is in "so much pain, that [she] just [has] to lie down and sleep it out." AR 127. According to plaintiff, she must lie down "seven to eight times per day" for "one hour to one and a half hours" at a time. AR 128. In her July 2021 Function Report, plaintiff noted that the "pain interferes with [her] ability to work, [] limits [her] ability to lift, carry, sit, stand, walk, and also limits [her] ability to move [her] legs, arms, write, type, or concentrate." AR 320. At her hearing, plaintiff claimed that she "can only tolerate, like 10, 15 minutes of sitting down at one time," which prevents her from working. AR 130. Plaintiff claimed that she walks "15 minutes" (AR 130) but she is

otherwise limited. Thus, in a March 2022 Function Report, plaintiff reported she can only walk about "100 feet" and then needs to rest for "1 hour" before she can resume walking. AR 347. However, when the ALJ asked her if she was told to do physical therapy, plaintiff testified that her doctor told her to "try walking." AR 131.  Plaintiff also stated that she can only lift "three pounds or less" without feeling pain. AR 130. In her July 2021 Function Report, plaintiff reported that she cannot do indoor or outdoor household chores. AR 313. Plaintiff expressed some limitations about her frequency of showering and types of dress she can wear (*e.g.,* loose clothing and not pullovers).  AR 131.  Overall, however, plaintiff can take care of her hygiene and can dress herself.  AR 131. Plaintiff also reported that she has problems with neuropathy. AR 132. She claimed that her hands, feet, and legs were numb, and that her right hand is "tingling" and she "can't control [her] fingers." AR 132.

As to her mental health symptoms, plaintiff testified that her nervousness and anxiety prevents her from working. AR 128. Plaintiff claims that she "worr[ies] all the time" and that she "feel[s] sad too." AR 128. Plaintiff also stated that "[m]ost of the time [she is] feeling sadness." AR 128. Plaintiff takes Ativan and Lexapro, but they make her dizzy, so she only takes the "when it's really, really, really [bad]."  AR 129.[2] Otherwise, plaintiff forgoes those medications and just sleeps. AR 129.  Aside from not taking her medications, plaintiff also failed to seek any specialist or counseling for her anxiety. AR 129. Plaintiff briefly testified that she has problems with her memory and concentrating. AR 132, 311. In her July 2021 Function Report, plaintiff reported that she "cannot tolerate stress, working under deadlines, or completing tasks on time," "gets "nervous and depressed," and had "problems [] thinking, concentrating, or focusing," and "cannot maintain attention for [two] – [two and a half hours] periods of time. AR 311.

D.      **Summary of ALJ's Findings**

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the [plaintiff's] statements concerning

---

[2] Plaintiff does not complete here sentence; however, it is implied that she means to say "really, really bad."

intensity, persistence, and limiting effects of [the] symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 27.

The ALJ first summarized plaintiff's medical records and spent several pages doing so. The ALJ concluded that plaintiff's statements were inconsistent with the medical evidence and other evidence of the record. The ALJ found that plaintiff's statements regarding back pain post-kyphoplasty were inconsistent with her medical records. AR 27-28. The ALJ found that plaintiff reported "over several office visits" that there was no back pain and that she was "doing well." AR 28. The ALJ found that one month after her kyphoplasty, the treatment records indicated that plaintiff "was doing well clinically with near complete resolution of pain." AR 28, 490. The ALJ also found that plaintiff "does not consistently report difficulty sitting or needing to lie down during the workday" and that plaintiff is "independent in her activities of daily living." AR 28. The ALJ also found that there were "no ongoing reports of dizziness, memory issues, or hand and/or neuropathy issues." AR 28. The ALJ found that "physical and neurological examination findings were also generally unremarkable." AR 28. The ALJ also found that plaintiff was only on Tramadol "as needed" for pain and that her neuropathy appeared untreated. In sum, the ALJ determined that the foregoing medical evidence was "inconsistent with the alleged severity of [plaintiff's] impairments and functional limitations and diminishes the persuasiveness of those allegations." AR 28.

### III.   ANALYSIS

The ALJ provided clear and convincing reasons in rejecting plaintiff's symptom testimony. The ALJ "evaluated [plaintiff's] subjective complaints and other allegations in accordance with 20 CFR 404.1529 and SSR 16-3p." AR 22. The ALJ found that "[plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however [plaintiff's] statements concerning the intensity, persistence, and limiting effects of these [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record as a whole." AR 22. The ALJ discounted plaintiff's testimony because she found that: (1) plaintiff's testimony was

inconsistent with the objective medical evidence; (2) there was evidence of effective treatment and management with conservative treatment; (3) plaintiff failed to seek the recommended treatment and failed to follow prescribed treatments; and (4) evidence of plaintiff's daily living activities undercut the severity of her symptoms. AR 20-32.

### A. Plaintiff's Testimony Conflicted With The Objective Medical Evidence

The ALJ properly discounted plaintiff's statements because the ALJ found that plaintiff's statements were inconsistent with the objective medical evidence. *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony") (internal citations omitted). Contrary to plaintiff's arguments, a review of the Administrative Record (ECF No. 10-1) shows that the ALJ addressed the inconsistencies between the objective medical evidence and plaintiff's testimony. Further, the ALJ found inconsistencies between plaintiff's symptom allegations and statements to her physicians.

An ALJ does not err when she summarizes the medical evidence and points to specific allegations and testimony that were inconsistent with that medical evidence. *See Owen v. Saul*, 808 Fed. Appx. 421, 424 (9th Cir. 2020). Here, the ALJ found and pointed to specific instances where the objective medical evidence undercut plaintiff's symptom allegations. The ALJ found that plaintiff did not consistently report pain, did not consistently report difficult sitting or needing to lie down, and that her treatment records were largely unremarkable. Although the ALJ did not articulate the reasons all in one place, the Court looks to all pages of the ALJ's decision. *See Wendt v. Kijakazi*, 2023 U.S. App. LEXIS 32658, at * 3-4 (9th Cir. 2023) (citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022)). Here, the ALJ found several instances where the objective medical record did not support plaintiff's symptom testimony.  *See* Section II.D., *supra.*

//

//

### B.  The ALJ Found Evidence Of Effective Treatment

The ALJ provided clear and convincing reasons for rejecting plaintiff's symptom testimony because the ALJ found there was evidence of effective treatment and/or management through conservative treatment. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability.") (internal citations omitted); *see also Smartt*, 53 F.4th at 500 ("Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of impairment") (internal citations and quotations omitted). The ALJ found that the records show plaintiff underwent a successful kyphoplasty on February 3, 2021. AR 23 (citing AR 496). The record further noted that "post-procedure, claimant was able to ambulate without pain." *Id.* The ALJ also found that on the March 4, 2021, follow-up visit, the records indicated that plaintiff "was doing well clinically with near complete resolution of pain" and although there was some discomfort, it was not pain. AR 23 (citing AR 490). The ALJ also found that the records from Dr. Vicuna indicated that plaintiff was tolerating her chemotherapy well and that her myeloma was responsive to the chemotherapy. AR 24-27. Treatment records also indicated that plaintiff was prescribed "Ultram" which had been "relatively effective in alleviating her symptoms" and that she was on "Tramadol" "as needed for pain." AR 27 (citing AR 1086-87). The ALJ found that the record showed that plaintiff responded well to treatment, particularly in the case of her back pain and myeloma, and that her other symptoms were manageable with conservative treatment. These were all clear and convincing reasons for rejecting plaintiff's symptom testimony. The ALJ did not err in rejecting plaintiff's symptom testimony because she found that evidence of effective and/or conservative treatment undercut plaintiff's symptom testimony.

### C.  The ALJ Found That Plaintiff's Failure to Seek Treatment Or Follow Prescribed Course Of Treatment Undermined Her Testimony

The ALJ properly discounted plaintiff's symptom testimony because the ALJ found that plaintiff failed to either follow or comply with the recommended treatment. AR 20-27; *See Chaudhry v. Astrue*,

688 F.3d 661, 672 (9th Cir. 2012) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated") (internal citations omitted); *see also* 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work.").

Here, the ALJ provided clear and convincing reasons for rejecting plaintiff's symptom testimony when she found various instances where plaintiff either refused the recommended treatment or failed to comply with the recommended treatment. For example, the ALJ found that although plaintiff's "treatment records noted that she was on Ambien for her insomnia…[plaintiff] admitted at her hearing that she did not take this medication consistently, which suggests that this impairment is not as severe as she has alleged." AR 14, 1086. The ALJ also found that at the hearing plaintiff testified that although "she feels sad," she did not take her Ativan and Lexapro (*See* (AR 15, 852, 1084) consistently. AR 15. The ALJ specifically noted plaintiff's failure to follow a prescribed treatment and therefore discounted her testimonies regarding her anxiety and depression. This was in combination with the ALJ's findings that plaintiff's treatment records showed that there was no depression or anxiety. AR 15. The ALJ also found that January 2021 records indicate that plaintiff was told to make an appointment for physical therapy; however, at the hearing, plaintiff claimed that "she was told by her doctor to walk rather than do physical therapy." AR 22 (citing AR 131, 1001). The ALJ also found that records from a later visit in March 2021 stated that plaintiff would benefit from physical therapy. AR 23. However, there was no evidence that plaintiff attempted physical therapy to relieve some of her symptoms.

The ALJ found that plaintiff failed to seek the recommended treatment of a stem cell transplant (SCT), nor did she provide an adequate explanation for her failure to seek treatment. AR 19, 21, 26, 27); *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (explaining that "an unexplained, or inadequately

explained, failure to seek treatment or follow a prescribed course of treatment" may be a sufficient reason to discredit a claimant's symptom testimony). The ALJ's findings that plaintiff's failure to follow a prescribed treatment and/or seek recommended treatment were clear and convincing reasons for discounting her symptom testimony. Therefore, the ALJ properly discounted plaintiff's symptom testimony.

**D.     The ALJ Found Evidence Of Activities Of Daily Living Which Undermined Plaintiff's Testimony**

The ALJ discounted plaintiff's symptom testimony because the ALJ found that plaintiff's activities of daily living undercut her alleged severity. *See Smartt*, 53 F.4th at 499 ("Even if the claimant experiences some difficulty or pain, her daily activities may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment") (internal citations and quotations omitted); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.") (citations omitted). "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citations omitted). Only if the "level of activity [is] inconsistent with [the claimant's] claimed limitations would these activities have any bearing on [the claimant's] credibility." *Id*. (quotation marks and citation omitted). The ALJ found that plaintiff can "drive, cook, manage her money shop, read books, listen to the radio, spend time with others on the telephone, through texting, and email, and use the internet which shows that plaintiff is able to engage in a somewhat normal level of daily activity and interaction despite her allegations." AR 16 (citing AR 313-315, 344-346). An ALJ can properly discount a claimant's testimony when the daily activities demonstrate an inconsistency between the functions the

claimant can admittedly perform and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012). Here, the ALJ found that plaintiff's daily activities showed that she "has engaged in a somewhat normal level of daily activities and interactions despite her allegations." AR 16. For example, although plaintiff complained of an inability to concentrate and memory problems (*See* AR 132, 311), the ALJ found that plaintiff testified that she continues to drive and that "[d]riving requires the ability to recall and use information, including using reason and judgment…[and] the medical evidence does not show any provider has observed the [plaintiff] to have any significant or persistent problems with her memory, intelligence, or judgment." AR 16. In addition, the ALJ found that treatment records noted that plaintiff "walks about 20-30 minutes daily," which the ALJ found inconsistent with the "complaints of disabling, debilitating symptoms and limitations." AR 21. Here, the ALJ made a reasonable determination that the evidence of daily activities was inconsistent with the alleged *severity* of her symptoms. The ALJ noted "[d]espite the evidence demonstrating that the [plaintiff] has suffered from some medically determinable severe impairments, the evidence also, establishes that the [plaintiff[ retains the capacity to function adequately to perform may basic activities associated with work." AR 31. Therefore, the ALJ properly discounted plaintiff's subjective testimony.

IV.   **CONCLUSION**

Neither a reversal of the ALJ's determination and an award of benefits, nor remand is warranted since the ALJ provided clear and convincing reasons for discounting plaintiff's statements.

ACCORDINGLY,

**IT IS ORDERED that**:

1.  The relief sought by Plaintiff in her Brief (ECF No. 12) is DENIED.
2.  Commissioner's Countermotion (ECF No. 16) is GRANTED, and the Administrative Law Judge's decision is AFFIRMED.

3. The Clerk of Court is directed to enter final judgment AFFIRMING the decision of the Commissioner of Social Security.

4. The Clerk of Court shall CLOSE this case.

DATED this 17th day of July 2024.

IT IS SO ORDERED.

_____
Hon. Maximiliano D. Couvillier III
United States Magistrate Judge